UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

PAUL DENVER WILSON, JR.
*Appellant/Defendant*

v.

UNITED STATES OF AMERICA,
*Appellee.*

Case Number 1:25-CR-289

MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Appellant/Defendant Paul Denver Wilson, Jr.'s ("Defendant") appeal of his convictions. *See* ECF 1, 7. Upon consideration of the pleadings and for the reasons set forth below, Defendant's convictions are AFFIRMED.

## I. BACKGROUND

On August 19, 2025, the Honorable Leonie M. Brinkema, United States District Judge, issued an Order in which she found that Defendant "has been extremely disruptive in the [Albert V. Bryan United States Courthouse, hereinafter "the Courthouse"], including harassing a member of the public and being belligerent with staff[.]" *One*[1] *and Joseph Ben One v. United States of America*, No. 1:24-cv-1747, ECF 20 (E.D. Va. Aug. 19, 2025). To "safeguard employees and visitors at the courthouse," Judge Brinkema authorized the U.S. Marshals Service and the Court Security Officers (CSOs) "to bar Mr. Wilson from entry into the courthouse unless a judge requires his physical presence at [a] proceeding." *Id.*

On August 25, 2025, Defendant was not aware of Judge Brinkema's August 19, 2025, Order. ECF 2, Transcript of Bench Trial and Sentencing ("Tr.") at 43:10-12. On that day,

[1] Defendant is also known as "One." *See* ECF 3 at 1.

Defendant entered the Courthouse to submit a filing. *Id.* at 42:7-8. All members of the public seeking to enter the Courthouse must pass through the security screening area in the front lobby area before passing through the magnetometers. *Id.* at 17:1-7. There is a handicap entrance available for anyone who cannot go through the magnetometer. *Id.* at 20:12-17. The handicap entrance is not open for public use. *Id.* at 20:19-20.

After entering the front doors of the Courthouse, Defendant walked over to the locked handicap entrance and attempted to forcefully open it. *Id.* at 21:4-7. A Court Security Officer ("CSO") then used his radio to call for assistance. *Id.* at 31:2-11. Deputy Marshal Tim Alley was one of the officers that responded to the radio call, and he approached Defendant and identified himself as a Marshal. *Id.* at 22:1-3. Defendant began yelling and screaming about having warrants, that he can do whatever he wants, and that the rules do not apply to him, among other things. *Id.* at 22:5-13. Deputy Marshal Alley advised Defendant of Judge Brinkema's Order and told him that he could file documents but was required to leave the Courthouse. *Id.* at 22:16-22. Defendant did not leave the premises but instead continued yelling and screaming, including saying, "[e]verybody here in this area is going to die." *Id.* at 22:23-23:3. Defendant was repeatedly instructed by Deputy Marshal Alley to leave the premises. *Id.* at 28:2-17. Defendant eventually voluntarily left the premises and ended the encounter. *Id.* at 23:4-5, 43:23-25. The entire encounter lasted approximately five to eight minutes. *Id.* at 17:11-13. Approximately nine to ten CSOs and United States Marshals responded to the lobby of the Courthouse. *Id.* at 31:12-15. Those officers left their normal duties to assist with the encounter with Defendant in the lobby. *Id.* at 24:21-25:5, 26:20-27:21. Deputy Marshal Alley described the disturbance on court security personnel as "substantial." *Id.* at 27:22-28:1.

The lobby is the only public entrance into the Courthouse. *Id.* at 17:8-10, 19:13-14. For the duration of the encounter, the CSOs blocked members of the public from entering the Courthouse because the area was not secured. *Id.* at 24:15-20, 25:9-18. Specifically, one woman was denied entry into the Courthouse by a CSO for about four minutes during this encounter. *Id.* at 26:5-17, 35:3-15.

On September 29, 2025, Defendant appeared for trial before Magistrate Judge William E. Fitzpatrick. ECF 3 at 4. At the end of trial, Magistrate Judge Fitzpatrick found Defendant guilty of disorderly conduct in violation of 41 C.F.R. § 102-74.390 (Count 1) and failing to comply with the lawful order of a federal police officer while on federal property, in violation of 41 C.F.R. § 102-74.385 (Count 2). ECF 3 at 9. Judge Fitzpatrick imposed a sentence of time served on Count 1 and a period of one year of unsupervised probation on Count 2. *Id.*

Defendant appealed Magistrate Judge Fitzpatrick's decision on October 15, 2025. ECF 1. Defendant filed his brief in support of his appeal on January 9, 2026. ECF 7. The government responded on February 13, 2026. ECF 12. Defendant filed a reply in support of his appeal on February 20, 2026. ECF 13. The matter is therefore ripe for disposition.

## II. LEGAL STANDARDS

A district court reviews a magistrate judge's findings of fact for clear error, while issues of law are reviewed de novo. *United States v. Bursey*, 416 F.3d 301, 306 (4th Cir. 2005). The void for vagueness doctrine is a function of the due process clause of the Fifth Amendment. *United States v. Williams*, 553 U.S. 285, 304 (2008). Under the vagueness doctrine, a criminal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory

enforcement." *Doe v. Cooper*, 842 F.3d 833, 843 (4th Cir. 2016) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)).

## III. ANALYSIS

Defendant raises three arguments in his appeal: 1) that 41 C.F.R. § 102-74.390 and 41 C.F.R. § 102-74.385 are unconstitutionally vague as applied to his conduct; 2) that his convictions violated his First Amendment qualified right of access to the Courthouse; and 3) that Congress' delegation of authority to define elements of federal crimes to the Executive Branch violates the Constitution. ECF 7 at 2. The Court will address each challenge in turn.

### A. Defendant's Void for Vagueness Challenges

First, Defendant argues that both 41 C.F.R. § 102-74.390 and 41 C.F.R. § 102-74.385 are unconstitutionally vague as applied to his conduct. He argues that both regulations fail to provide a fair warning of what conduct is prohibited and invite arbitrary enforcement. ECF 7 at 10.

#### 1. Facial Versus As Applied Challenge

This Court must begin its analysis by focusing on the type of challenge Defendant asserts in his appeal. There are two types of Fifth Amendment challenges a Defendant can assert: a facial challenge or an as applied challenge. The substantive rule of law necessary to establish a constitutional violation is the same for both types of challenges. *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 331 (2010). However, the distinction is not merely academic—it "affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding 'breadth of the remedy'[.]" *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019) (quoting *Citizens United*, 558 U.S. at 331).

"A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications." *Bucklew*, 587 U.S. at 138. Such broad challenges necessitate that these

cases "often rest on speculation about the law's coverage and it's future enforcement," and it requires litigants to show that "no set of circumstances exists under which the regulation would be valid." *Nat'l Urb. League v. Trump*, 783 F. Supp. 3d 61, 87 (D.D.C. 2025) (internal citations and quotations omitted). That burden is softened in First Amendment cases, where a challenger can succeed on a facial challenge if they show that the regulation "prohibits a substantial amount of protected speech relative to its plainly legitimate sweep." *United States v. Hansen*, 599 U.S. 762, 770 (2023) (internal citations and quotations omitted). In these cases, the court must look at the entire scope of the challenged law, asking: "What activities, by what actors, do the laws prohibit or otherwise regulate?" *Moody v. NetChoice, LLC*, 603 U.S. 707, 724 (2024). The court then decides if the "law's unconstitutional applications substantially outweigh its constitutional ones." *Id.*

As applied challenges are different in kind. These challenges are focused on whether the regulation is "unconstitutional as applied to their particular speech activity." *Edwards v. D.C.*, 755 F.3d 996, 1001 (D.C. Cir. 2014) (citing *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 802–03 (1984)). This kind of claim "'tests the application of th[e] restriction to the facts of a plaintiff's concrete case.'" *Nat'l Urb. League*, 783 F. Supp. 3d at 88 (quoting 16A Am. Jur. 2d Constitutional Law § 419 (Jan. 2025 update)). It does so based on a "factual record" that enables the Court to assess "the application of" the challenged restriction "to a specific person." *Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009) (en banc). This "necessarily requires the development of a factual record for the court to consider." *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1380 (11th Cir. 2019) (internal quotation marks and citation omitted).

It is clear, by Defendant's own words, that he brings an as applied challenge. ECF 7 at 1 ("Mr. Wilson's convictions must be reversed because the regulations under which he was conviction are unconstitutionally vague *as applied to his conduct*.") (emphasis added); *id.* at 10 ("This Court should … hold that § 102-74.390 and § 102-74.385 are unconstitutionally vague *as applied to Mr. Wilson's conduct*.") (emphasis added). Indeed, Defendant clearly disavowed any facial challenge of the relevant regulations in his reply. Defendant explained that he "does not challenge the constitutionality of the regulation as to anyone's conduct but his own." ECF 13 at 4. As such, this Court focuses its analysis, as it must with an as applied challenge, to the application of the relevant regulations to Defendant's particular speech activity. This Court will not address the regulation's applications to facts not before it. *United States v. Baldwin*, 745 F.3d 1027, 1031–32 (10th Cir. 2014) ("[U]nder governing precedent, a defendant won't be heard to complain about the vagueness of a criminal law as it applies to *other* defendants in *other* cases. He may complain *only* about the vagueness of the law as it applies in *his own case*.") (emphasis in original).

**2. Void for Vagueness Standards**

Now that the Court has identified the type of challenge the Defendant brings, it turns to his substantive arguments. Defendant challenges 41 C.F.R. § 102-74.390 and 41 C.F.R. § 102-74.385 under the Due Process clause of the Fifth Amendment as being unconstitutionally vague as applied to his conduct. ECF 7 at 1. The vagueness doctrine describes two different types of impermissible vagueness: The first rests on a "fundamental principle" of "our legal system": laws "regulat[ing] persons or entities must give fair notice of conduct that is forbidden or required." *Karem v. Trump*, 960 F.3d 656, 664 (D.C. Cir. 2020) (internal citations and quotations omitted). To do so, the law must "provide people of ordinary intelligence a reasonable opportunity to understand what conduct

it prohibits." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). The second kind of vagueness arises if the law "authorizes or even encourages arbitrary and discriminatory enforcement." *Id.* (citation omitted). When a law "interferes with the right of free speech… a more stringent vagueness test should apply." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982). However, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward v. Rock Against Racism,* 491 U.S. 781, 794 (1989) (citations omitted). "Therefore, even when a law implicates First Amendment rights, the constitution must tolerate a certain amount of vagueness." *Cal. Teachers Ass'n v. Bd. of Educ.*, 271 F.3d 1141, 1151 (9th Cir. 2000).

Ordinarily, "'a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *United States v. Moriello*, 980 F.3d 924, 931 (4th Cir. 2020) (quoting *Vill. of Hoffman Ests*, 455 U.S. at 495). Defendant argues that this principle only applies to facial vagueness challenges but provides no legal support for that proposition. ECF 13 at 4. The Supreme Court confirmed that this principle applies to cases dealing with speech, explaining that the rule "makes no exception for conduct in the form of speech." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 20 (2010) (citing *Parker v. Levy*, 417 U.S. 733, 755–757 (1974)); *see also id.* ("Thus, even to the extent a heightened vagueness standard applies, a plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim under the Due Process Clause of the Fifth Amendment for lack of notice. And he certainly cannot do so based on the speech of others."). And indeed, the Supreme Court applied this principle to an as applied void for vagueness challenge. In *Holder v. Humanitarian L. Project*, the Court rejected an as applied void for vagueness challenge to the material support for a foreign terrorist organization statute. 561 U.S. 1, 8 (2010) ("We conclude that the material-support statute

is constitutional as applied to the particular activities plaintiffs have told us they wish to pursue."). In doing so, the Court found it "dispositive" that the "statutory terms [were] clear in their application to plaintiffs' proposed conduct, which [meant] that plaintiffs' vagueness challenge must fail." *Id.* at 21; *see also id.* ("Even assuming that a heightened standard applies because the material-support statute potentially implicates speech, the statutory terms are not vague as applied to plaintiffs.") (citation omitted). As such, if Defendant's conduct is clearly proscribed by the regulations at issue, his vagueness challenges will fail.

#### 3. Neither 102-74.390 nor 102-74.385 is vague as applied to Defendant's conduct.

Defendant challenges his convictions under 41 C.F.R. § 102-74.390 and 41 C.F.R. § 102-74.385, arguing both that the regulations did not provide adequate notice of the prohibited conduct and that they are subject to arbitrary enforcement. ECF 7 at 10-18, 21. For the reasons that follow, Defendant's vagueness challenge as to these regulations fail because these regulations clearly apply to his conduct.

Section 102-74.390 is a disorderly conduct regulation. The regulation provides:

> All persons entering in or on Federal property are prohibited from loitering, exhibiting disorderly conduct, or exhibiting other conduct on property that—
>
> (a) Creates loud or unusual noise or a nuisance;
>
> (b) Unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; [or]
>
> (c) Otherwise impedes or disrupts the performance of official duties by Government employees.

41 C.F.R. § 102-74.390. Section 102-74.285, is a failure to comply regulation, and it in turn, provides: "Persons in and on property must at all times comply with official signs of a prohibitory, regulatory, or directory nature and with the lawful direction of Federal police officers

and other authorized individuals." *Id.* at § 102-74-385.[2] Magistrate Judge Fitzpatrick found that the government had proven each element of both charges beyond a reasonable doubt. ECF 3 at 8-9.

This Court finds that Petitioner's void for vagueness challenges fail because his conduct is clearly proscribed by both regulations. In so finding, the Court finds the Fourth Circuit's analysis in *United States v. Moriello*, 980 F.3d 924 (4th Cir. 2020) instructive. In *Moriello*, an immigration attorney refused to stop using her cell phone during a hearing she was observing, despite multiple directions by an officer to turn off the cellphone. *Id.* at 928-30. The attorney was charged with violating Sections 102-74.390 and 385, and she challenged both regulations as unconstitutionally vague. *Id.* at 930. The Fourth Circuit denied both challenges, finding that "any person of ordinary intelligence would understand that the regulations prohibit the repeated refusal to cease distracting conduct in a courtroom during ongoing immigration proceedings as directed by both the presiding immigration judge and the uniformed bailiff assigned to that courtroom." *Id.* at 931.

Other courts have also found that the same or similar regulations prescribing behavior on federal property are not unconstitutionally vague because a reasonable person understands what qualifies as disruptive or noncompliant behavior. As the Second Circuit in *United States v. Wasylyshyn* explained, "the enforcement context is dispositive of [a regulation's] survival under [a] vagueness attack." 979 F.3d 165, 176 (2d Cir. 2020); *see also Longworth v. Trump*, 822 F. Supp. 3d 1134, 1141 (D. Or. 2026) ("Appropriate behavior is context specific. … Both 'loud' and 'unusual' must be placed in context to be understood."). And when analyzing Section 102-74.390 specifically, the Second Circuit found this regulation only applies on federal property, and a reasonable person can "discern with relative ease" whether a noise was "loud" or "unusual" and

[2] As of November 5, 2025, the regulations at issue were removed and replaced by other Department of Homeland Security regulations. *See* Final Rule, 91 Fed. Reg. 2316-01, 2026 WL 129046 (Jan. 20, 2026).

what constitutes a nuisance in a federal courthouse. *Wasylyshyn*, 822 F. Supp. 3d at 175. The court concluded: "We have little doubt that, inside a federal courthouse, a reasonable person would discern that 'yelling' at a CSO constitutes creating a 'loud noise.'" *Id.* at 175. Other courts have made similar findings. *See United States v. Zagorovskaya*, No. CR 13-583 PA, 2014 WL 12665158, at *11 (C.D. Cal. Oct. 8, 2014), *aff'd*, 628 F. App'x 503 (9th Cir. 2015) (finding that because 41 C.F.R. § 102-74.390 applied only to persons entering property controlled under GSA, "a reasonable person of ordinary intelligence could determine what type of conduct constitutes a nuisance, trouble, annoyance, or inconvenience while she is on or entering federal property."); *United States v. Cruscial*, No. 3:18-CR-00465-JR, 2019 WL 1087150, at *4 (D. Or. Mar. 7, 2019) (finding a "person of ordinary intelligence would understand that significant and persistent interference with the ingress and egress of human and vehicle traffic on federal property constitutes an unreasonable obstruction of the usual use of government entrances, offices, and parking lots."); *c.f. Longworth*, 822 F. Supp. 3d at 1142–43 (finding vagueness in a noise ordinance that applied to "high-traffic public sidewalks abutting four lane roads" which did not "lend itself to readily deducible inferences with a 'high degree of accuracy' about what is and is not expected behavior").

Defendant seeks to resist the application of these principles to his case by directing the Court's attention to *Carolina Youth Action Project v. Wilson*, 60 F.4th 770 (4th Cir. 2023).[3] ECF 7 at 10. In *Carolina Youth Action Project*, the Fourth Circuit analyzed two provisions of the South Carolina Code: one that criminalized "conduct[ing] [one]self in a disorderly or boisterous manner… in hearing distance of any school house," S.C. Code Ann. § 16-17-530(A)(1) & (2), and another that criminalized disturbing the students or teachers of any school or acting in an

[3] Defendant also argues the Court should follow the reasoning in *United States v. Estrada Iglesias*, 425 F. Supp. 3d 1265 (D. Nev. 2019). ECF 7 at 11-12. In addition to that case being non-binding on this Court, Defendant readily concedes that decision was reversed and remanded by the District Court Judge. *See* ECF 13 at 9. As such, the decision is not persuasive to this Court.

"obnoxious manner" at a school, S.C. Code § 16-17-420(1) (effective June 2, 2010 to May 16, 2018). The Fourth Circuit ultimately found that both laws were unconstitutionally vague "as applied to elementary and secondary school students." *Carolina Youth Action Project*, 60 F.4th at 781. The Court explained at the outset that it would be mindful of the "unique circumstances of students in a school setting[.]" *Id.* at 782. Indeed, the Court's main concern focused on how to "objectively distinguish *criminally* disorderly, boisterous, obscene, or profane childhood misbehavior from *garden-variety* disorderly, boisterous, obscene, or profane childhood misbehavior?" *Id.* at 782-83 (emphasis in original). When analyzing the definitions of "disorderly," "obscene," and "profane," the Court found that it would be "hard to escape the conclusion that any person passing a schoolyard during recess [would] likely [be] witnessing a large-scale crime scene." *Id.* at 783. The Court concluded that these laws were unconstitutionally vague because it was unclear "what acts of adolescent mischief are covered by law and what are not." *Id.* (cleaned up).

Defendant asserts that the decision in *Carolina Youth Action Project* was not "limited to school students," but that instead it applied a "general vagueness doctrine" that requires skepticism of the terms "disorderly" and "boisterous." ECF 13 at 5-6. This Court disagrees. *Carolina Youth Action Project* was an as applied vagueness challenge, which inherently makes the Fourth Circuit's inquiry a fact intensive one. *Nat'l Urb. League*, 783 F. Supp. 3d at 88 (quoting 16A Am. Jur. 2d Constitutional Law § 419 (Jan. 2025 update)) (as applied challenges "'test[] the application of th[e] restriction to the facts of a plaintiff's concrete case.'"). Further, the entirety of the Fourth Circuit's analysis focused on assessing those specific statutes in the context of a schoolyard. In that way, it aligns, and does not contradict, the string of cases cited *infra*, which found that "the enforcement context is dispositive of [a regulation's] survival under [a] vagueness attack." *Wasylyshyn*, 979

F.3d at 176. The Fourth Circuit's ultimate findings in *Carolina Youth Action Project* regarding the application of disorderly conduct laws to children in school are not as helpful when assessing the vagueness of the relevant regulations as applied within the context of a federal courthouse. Instead, *Moriello* is the more apt comparator.

Turning to the particular facts at issue, both vagueness challenges fail because Defendant's conduct was clearly proscribed by the regulations. The context of the case at hand involves what a reasonable person would expect when entering a federal courthouse.

As to whether these regulations provided adequate notice in this case, this Court finds that they did. Regarding § 102-74.390, this Court finds that a reasonable person entering a federal courthouse would discern that yelling and screaming things such as "everybody in this area is going to die" at court security personnel for five to eight minutes would constitute a loud and unusual noise and nuisance in violation of § 102-74.390(a); that creating a security disturbance that required the public entrance of the Courthouse to be blocked for five to eight minutes, and indeed prevented the entry of a member of the public for about four minutes, would unreasonably obstruct the only public entrance to the Courthouse in violation of § 102-74.390(b); and that engaging in behavior that caused nine to ten CSOs and two deputy marshals to be diverted from their assigned responsibilities impeded and disrupted the officers from their official duties in violation of § 102-74.390(c). *Moriello*, 980 F.3d at 931; *Wasylyshyn*, 979 F.3d at 175; *Zagorovskaya*, 2014 WL 12665158, at *11; *Cruscial*, 2019 WL 1087150, at *4. Similarly, regarding § 102-74.285, this Court finds that a reasonable person would discern that repeated refusal to comply with multiple instructions over multiple minutes by a deputy marshal to leave the premises of a federal courthouse would be a violation of § 102-74.285, regardless of any potential eventual compliance. *Baldwin*, 745 F.3d at 1031–32 ("And it's clear enough from the

terms of regulations before us that, whatever else they do or don't proscribe, driving off while a uniformed officer is busy issuing a warning, and doing so over the officer's instructions to stop, counts as disobeying that person's directions and disrupting performance of his official duties.").

Defendant's second contention—that both regulations are vague because they allow arbitrary and discriminatory enforcement—also fails. When considering as applied vagueness challenges courts may determine that "[e]ven in the absence of specific standards, however, a statute will survive an as-applied vagueness challenge if the conduct at issue falls within the core of what the statute prohibits." *United States v. Fitzgerald*, 514 F. Supp. 3d 721, 741 (D. Md. 2021); *Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir. 2006) (same). This Court finds that Defendant's actions in shouting, preventing entrance to the Courthouse, causing multiple officers to respond to the disturbance, and refusing repeated directions to leave the Courthouse, fall within the "core" of what § 102-74.390 and § 102-74.285 seek to prohibit. *Wasylyshyn*, 979 F.3d at 17 (finding defendant's conduct could not "reasonably be described as anything other than conduct that creates a loud noise or nuisance in the courthouse lobby…" therefore placing the conduct "'within the core'" of the regulation's prohibition, thus dooming her vagueness challenge.); *United States v. Boykins*, No. 3:23-CR-00024, 2024 WL 3463955, at *4 (E.D. Va. Jul. 17, 2024) ("Because 18 U.S.C. § 1028A(a)(1) clearly proscribes Mr. Boykins' alleged conduct, *i.e.*, creating fake medical records about treatment never provided on the day the billing indicated by using unsuspecting Medicaid beneficiaries' identities and personal information to misrepresent *who* had received his services, the statute survives a vagueness analysis as applied to Mr. Boykins.") (emphasis in original). Defendant's conduct cannot be reasonably understood in any other way, and no reasonable officer would have found otherwise.

In conclusion, this Court finds that as applied to these circumstances the regulatory terms were "clear in their application to [Defendant's conduct]" which means that "[his] vagueness challenge must fail." *Holder*, 561 U.S. at 21.

**B. First Amendment Challenges**

Defendant next argues that his prosecution violated his qualified right to access the courts under the First Amendment and procedural due process grounds. ECF 7 at 21. Defendant does not challenge the regulations on the basis of overbreadth but instead argues that the order excluding him from the Courthouse violated the First Amendment and procedural due process because it was enforced without prior notice and an opportunity to be heard. *See* ECF 13 at 11 ("Criminal enforcement of an exclusion order of which he had no prior notice and no opportunity to contest therefore violated both the Due Process Clause and his qualified First Amendment right of access."). However, the criminal charges in this case were based upon Defendant's disruptive behavior – the yelling and screaming, attempting to open a locked entrance, causing a disruption that required the response of multiple CSOs and Marshals, blocking of the entrance to the public Courthouse, and refusing to follow orders to leave the premises – independent of the exclusion order. Indeed, the criminal information charges Defendant with violations of 41 C.F.R. 102-74.390 and 41 C.F.R. § 74.385, without any reference to the exclusion order. ECF 1-1 at 21-23. Even if it were true that there was a deficiency in the notice and opportunity to challenge provided to Defendant, a question this Court need not answer,[4] any such deficiency does not negate

[4] *But see Schultz v. San Joaquin Cnty. Sheriff's Dep't*, No. 2:19-CV-02468-DAD-KJN, 2024 WL 35992, at *6 (E.D. Cal. Jan. 3, 2024), *appeal dismissed sub nom. Schultz v. Cnty. of San Joaquin*, No. 24-692, 2024 WL 5397243 (9th Cir. Aug. 13, 2024) ("[D]istrict courts have held that there is no constitutionally protected liberty interest in unrestricted access to a courthouse.") (collecting cases); *Alter v. Gibbs*, No. CV-25-01713, 2026 WL 1162714, at *2 (D. Ariz. Apr. 29, 2026) ("Plaintiff was not entitled, as a matter of law, to notice or have an opportunity to be heard before he was denied unfettered physical access to the courthouse or law library."); *Gessner v. Plummer*, No. 3:10-CV-223, 2011 WL 2712529, at *11 (S.D. Ohio June 1, 2011), *report and recommendation adopted*, No. 3:10-CV-223, 2011 WL 2711286 (S.D. Ohio July 13, 2011) (finding defendant had "no procedural due process rights with respect to the issuance, maintenance in place, or rescission of the [exclusion notice].").

Defendant's criminal conduct. If Defendant wishes to challenge the exclusion order itself, any such challenge could be brought in an appeal or a civil case outside the bounds of these criminal convictions. As such, this challenge fails.

### C. Non-Delegation Doctrine Challenge

Finally, Defendant argues that the criminal regulations at issue violate the prohibition on the delegation of Congressional power to define criminal conduct. ECF 7 at 24–29. Generally, Defendant argues that the Homeland Security Act of 2002, 40 U.S.C. § 1315(c), unconstitutionally delegated the power to define federal crimes to the Secretary of Homeland Security. *Id.* at 24. However, Defendant concedes that this claim is foreclosed by binding Fourth Circuit precedent in *United States v. Moriello*, 980 F.3d 924 (4th Cir. 2020). *See* ECF 7 at 25 (explaining "[t]his delegation violates the Constitution, although Mr. Wilson acknowledges that this claim is foreclosed by binding precedent"). As such, this challenge fails.

## IV. CONCLUSION

For the foregoing reasons it is hereby

**ORDERED** that the judgment in this case is **AFFIRMED**.

IT IS **SO ORDERED**.

/s/
Michael S. Nachmanoff
United States District Judge

September 4, 2026
Alexandria, Virginia